```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                         CHARLESTON
```

**PABLO ANTONIO PENA CONTIN,**

    **Plaintiff,**

**v.**                                     **CASE NO. 2:10-cv-000491**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Pablo Antonio Pena Contin (hereinafter referred to as "Claimant"), protectively filed an application for SSI on December 18, 2007, alleging disability as of January 17, 2006, due to a nervous breakdown and bipolar disorder. (Tr. at 9, 85-91, 114, 142.) The claim was denied initially and upon reconsideration. (Tr. at 45-49, 51-53.) On September 16, 2008, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 54.) The hearing was held on April 2, 2009, before the Honorable Theodore Burock. (Tr. at 17-36.) By decision dated July 21, 2009, the ALJ determined that Claimant was not

entitled to benefits. (Tr. at 9-16.) The ALJ's decision became the final decision of the Commissioner on February 18, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-2.) On April 16, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to

Subpart P of the Administrative Regulations No. 4.  Id. § 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 416.920(f) (2009).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 11.)  Under the second inquiry, the ALJ found that Claimant has medically determinable impairments that are not severe.  (Tr. at 11.)  On this basis, benefits were denied.  (Tr. at 16.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was sixty-six years old at the time of the administrative hearing. (Tr. at 23.) Claimant graduated from high school and attended one year of college. (Tr. at 23, 26.) In the

4

past, he worked as a costume designer. (Tr. at 23.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

Claimant was hospitalized at Cabell Huntington Hospital from January 19, 2006, through January 20, 2006, after he had a seizure. Claimant had become increasingly combative and psychotic over the past three days before his hospitalization. He was diagnosed with seizures and delirium of uncertain etiology, rule out mood change secondary to possible mood disorder. (Tr. at 219, 221, 223.)

Claimant was hospitalized involuntarily at St. Mary's Medical Center from January 26, 2006, through February 4, 2006. Claimant was committed by his employer after progressively delusional and bizarre behavior, speech and ideation in the preceding eleven days. Claimant had a tonic-clonic seizure associated with cyanosis and other valid findings. Neurological examination was normal, including an EEG and non-contrast CT of the head. (Tr. at 228.) Claimant was prescribed Depakote and Geodon. His discharge diagnoses included psychotic disorder NOS, cognitive disorder, NOS, grand mal seizure disorder x2, recurrent headache, hypertriglyceridemia and anemia, mild. (Tr. at 229-30.)

On February 6, 2006, Claimant reported to Plateau Medical Center in an agitated state, complaining that he may have had a heart attack. (Tr. at 286.) Claimant was diagnosed with acute

psychosis.  (Tr. at 287.)

On May 8, 2006, a State agency medical source, Timothy Saar, Ph.D., completed a Psychiatric Review Technique form and opined that Claimant's impairments were severe, but not expected to last twelve months.  Dr. Saar found that Claimant had a mild degree of limitation in the three areas of functioning and that he had three episodes of decompensation, each of extended duration.  (Tr. at 290-303.)

On March 15, 2008, a State agency medical source, Debra Lilly, Ph.D., completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe.  She found mild limitations in the three areas of functioning and no episodes of decompensation of extended duration.  (Tr. at 304-17.)

On March 30, 2008, Serafino S. Maducdoc, Jr., M.D. conducted a consultative physical examination at the request of the State disability determination service.  Claimant's chief complaint was nervousness.  Claimant reported he had been diagnosed with bipolar disorder.  Dr. Maducdoc's impressions included bipolar disorder, chronic depression and possible senile dementia, early stages.  (Tr. at 318-20.)

On April 10, 2008, a State agency medical source, Umma Reddy, M.D., completed a Physical Residual Functional Capacity Assessment and opined that Claimant had no severe physical impairments.  (Tr. at 328-35.)

A subsequent undated and unsigned Physical Residual Functional Capacity Assessment again finds no severe physical impairments. (Tr. at 337-44.)

The record includes treatment notes from the Petersen Clinic, PLLC from Millie Petersen, D.O. and Bruce Petersen, D.O. dated June 28, 2006, through July 14, 2008. Claimant was primarily treated for bipolar disorder and other acute, short term conditions. (Tr. at 345-77.)

The record includes a later added intake/reassessment evaluation from FMRS Health Systems, Inc. dated March 30, 2006. The report states that Claimant "was discharged from BARH about four weeks ago following a manic episode. He has had multiple hospitalizations starting in January of this year. He was admitted about 7 times in three months including at [Cabell] Huntington, Prestera, Saint Mary's, PMC and twice at BARH. He has been diagnosed with bipolar disorder." (Tr. at 382.) Claimant reported he was doing well on medication. (Tr. at 382.) On examination, Claimant's mood was good and his affect was reactive with a full range. He had a clear sensorium and his thought processes seemed linear and goal directed. He denied psychotic symptoms. Insight seemed to be fair and judgment appeared to be intact. Cognitive functioning was average. Aditya Sharma, M.D. diagnosed bipolar I disorder, most recent episode manic with psychotic symptoms, in

7

partial remission on Axis I and rated Claimant's GAF at 55 to 60.[1]

On October 16, 2006, Dr. Sharma noted that Claimant was doing well, but struggled with insight issues. Claimant felt he should not be taking any medications, but that he had been compliant because he wanted to avoid another manic episode. Claimant's Risperdal was cut down to 2 mg. at bedtime only. He was continued on his present doses of Depakote ER and Trazodone. (Tr. at 384.)

On November 7, 2007, Emily Walden, PA-C of FMRS Health Systems, Inc. conducted a psychiatric evaluation. Ms. Walden noted that Claimant was "admitted to BARH under involuntary commitment on October 01, 2007. He had been having disorganized thoughts, he was psychotic, he was manic, speech was very rapid, he was delusional and grandiose. Patient was stabilized on medications in the hospital ...." (Tr. at 385.) Claimant reported he was doing much better. He complained his medications made him "really slow." (Tr. at 385.) Claimant's diagnosis was bipolar disorder, most recent episode manic with psychotic features on Axis I. Ms. Walden rated Claimant's GAF at 30.[2]

---

[1] A GAF rating between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers). American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. (Text Revision) 2000).

[2] A GAF rating between 21 and 30 indicates "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. (Text Revision) 2000).

On December 12, 2007, Dr. Sharma noted that Claimant was doing well as far as his mood was concerned. Claimant reported trouble with sleeping and medication side effects of sleeping during the day because of Ativan. Dr. Sharma diagnosed bipolar disorder, seizure disorder and glaucoma. Dr. Sharma discontinued the Ativan. (Tr. at 387.) On January 9, 2008, Dr. Sharma noted that Claimant was doing well, but continued having trouble with sleep at night. Dr. Sharma's diagnoses remained the same. Dr. Sharma increased Claimant's Trazodone. (Tr. at 388.) On February 28, 2008, Dr. Sharma noted that Claimant continued to do well on his medications. His mood was stable and he was sleeping much better. Claimant had no psychotic symptoms, and his mood was good. His affect seemed euthymic with a full range. (Tr. at 389.) On March 27, 2008, Dr. Sharma noted that Claimant was doing well and that his mood continued to remain stable. (Tr. at 390.) On May 22, 2008, Dr. Sharma noted that Claimant continued to do well, but was having problems with arthritis and was on Diclofenac. Claimant reported he was applying for disability. (Tr. at 391.) On August 14, 2008, Claimant was off his medication due to a Medicaid mix up and he began to "feel different." (Tr. at 392.) However, he had resumed the medication and was doing well, but was not sleeping. Dr. Sharma prescribed Ambien in addition to his other medications. (Tr. at 392.)

On August 29, 2008, a State agency medical source, James

Binder, M.D., completed a Psychiatric Review Technique form and opined that Claimant had severe mental impairments that resulted in mild restriction of daily activities, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace and no episodes of decompensation of extended duration.  (Tr. at 394-404.)

Dr. Binder also completed a Mental Residual Functional Capacity Assessment on which he opined that Claimant had a moderately limited ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. at 408-09.)

On November 6, 2008, Dr. Sharma noted that Claimant continued to do well on Depakote, Risperdal Consta and Ambien.  Claimant reported the medication prescribed for his arthritis was helping his condition.  Claimant was appropriately interactive, his mood seemed euthymic with full range of affect, and he had no psychotic symptoms.  (Tr. at 418.)

The record includes additional treatment notes from Drs. Millie and Bruce Peterson dated July 14, 2008, through January 6, 2009.  (Tr. at 421-34.)

On March 9, 2008, Claimant presented to Appalachian Regional

Healthcare, Inc. with complaints of shortness of breath and cough for several days. He was diagnosed with acute bronchitis. (Tr. at 436-37.)

The transcript includes records from Claimant's hospitalization at Beckley-Appalachian Regional Healthcare, Inc. ("BARH") from October 1, 2007, through October 23, 2007. Claimant was admitted in an agitated and psychotic state and had not been taking his medications. On medication, his mood stabilized. His discharge diagnosis was bipolar disorder, most recent episode manic with psychotic symptoms. His GAF was rated at 45-50 on discharge.[3]

Analysis

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. In his decision, the ALJ determined that Claimant had medically determinable impairments of arthritis, grand mal seizure disorder, acute prostatitis with hematuria, acute bronchitis, recurrent headaches, hypertriglyceridemia, mild anemia, bipolar disorder, cognitive disorder NOS, and psychotic disorder NOS, but that these impairments, alone and in combination, were not severe. (Tr. at 11.)

Claimant's primary impairment is bipolar disorder, and despite

---

[3] A GAF of 41-50 is defined as "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. (Text Revision) 1994).

11

hospitalizations in 2006 and 2007,[4] the medical evidence of record indicates that when medicated, Claimant's impairment did not significantly limit his ability to perform basic work related activities. As such, the ALJ's determination that Claimant did not suffer severe mental or physical impairments is supported by substantial evidence.

In making this finding, the court finds that the ALJ properly weighed the medical evidence of record related to Claimant's impairments in keeping with the applicable regulation at 20 C.F.R. § 416.927(d) (2009).

Regarding his mental impairments in particular, the ALJ relied on the opinions of the nonexamining State agency sources who opined that Claimant's mental impairments were not severe. He explained his reasons for rejecting the opinion of Dr. Binder, the one State agency source who opined that Claimant had severe mental impairments, noting that his findings were inconsistent with other evidence of record and his own findings. Indeed, the evidence of record indicates that when medicated, Claimant's symptoms related to bipolar disorder are manageable. Claimant testified as much

---

[4] Despite two hospitalizations in 2006 and one in 2007, as noted above, these did not qualify as repeated episodes of decompensation, each of extended duration, as that term is defined in evaluating mental impairments. To meet this requirement, a claimant must have "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence."  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(C)(4) (2009).

when he stated at the administrative hearing that he had "been doing fine because I take my medication." (Tr. at 30.) This fact is reflected also in the treatment notes from Dr. Sharma and others, which consistently indicate that when Claimant was compliant with his medication, his mental condition was stable.

Furthermore, even when the ALJ limited Claimant to jobs involving routine, repetitive tasks involving only incidental public contact in a hypothetical question to the vocational expert, the vocational expert identified a significant number of jobs that Claimant could perform. (Tr. at 33-34.)

Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: July 14, 2011

_____
Mary E. Stanley
United States Magistrate Judge